NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

UNITED FINANCIAL CASUALTY COMPANY, *Intervenor/Appellant*,

*v.*

ASSOCIATED INDEMNITY CORPORATION, *Intervenor/Appellee*.

No. 1 CA-CV 15-0564
FILED 11-3-2016

---

Appeal from the Superior Court in Yavapai County
No. P1300CV201300369, P1300CV201300989 (Consolidated)
The Honorable David L. Mackey, Judge

**VACATED AND REMANDED**

---

COUNSEL

Richards Law Office PC, Phoenix
By Charles F. Richards, Jr.
*Counsel for Intervenor/Appellant*

Sanders & Parks PC, Phoenix
By Mark G. Worischeck, Shanks Leonhardt
*Counsel for Intervenor/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

---

**G O U L D**, Judge:

¶1　　　Intervenor/appellant United Financial Casualty Company ("United") appeals the superior court's declaratory judgment that United, and not intervenor/appellee Associated Indemnity Corporation ("Associated"), had a duty to defend and indemnify the insured in the underlying tort action. For the following reasons, we vacate the judgment and remand for entry of judgment for United.

## FACTS AND PROCEDURAL HISTORY

¶2　　　Dorothy Ahlen lived at the Prescott Lakes Senior Apartments ("Prescott Lakes"), an independent living facility owned and operated by Mills Prescott, L.L.C. On March 20, 2012, Mills Prescott employee Ed Parsons drove Ahlen to a medical appointment in a shuttle van Mills Prescott offered as a service to Prescott Lakes residents. Shortly after Ahlen exited the van, she fell in a snow bank and injured herself. Ahlen had no memory of the fall, but a witness reported that she saw Ahlen exit the van, walk across a clear sidewalk onto the snow bank, and fall forward.[1]

¶3　　　Ahlen filed this lawsuit against, as relevant, Parsons and Mills Prescott, and the companies that managed Prescott Lakes (collectively, "Mills Prescott"). Mills Prescott's commercial general liability ("CGL") insurer, Associated, and commercial automobile insurer, United, both intervened in the lawsuit for the purpose of participating in discovery relevant to Ahlen's claims and insurance coverage issues.

¶4　　　United's commercial automobile insurance policy stated that United would pay damages for "bodily injury . . . for which an insured becomes legally responsible because of an accident arising out of the . . . use of an insured auto."[2] Conversely, Associated's CGL policy excluded, as relevant here, coverage for "bodily injury . . . arising out of the . . . use . . . of any" automobile. Both insurers filed complaints in intervention

---

[1]　　　The record contains conflicting evidence about whether Parsons was still at the scene when Ahlen fell. However, this disputed fact is not material to our analysis. *See Giovanelli v. First Fed. Sav. & Loan Ass'n of Phoenix*, 120 Ariz. 577, 582 (App. 1978) (stating that a disputed fact does not preclude summary judgment if that fact does not affect one party's right to judgment as a matter of law).

[2]　　　There is no dispute that the shuttle van was an "insured auto" under the automobile policy.

requesting that the court determine whether the policies they issued to Mills Prescott required them to defend and indemnify Mills Prescott in the underlying litigation.

¶5             United moved for summary judgment on the coverage issue, arguing that the undisputed evidence showed that Ahlen exited the vehicle in a safe place and manner and, therefore, her injuries did not arise out of the use of the vehicle, a necessary predicate for coverage under the automobile policy.  Associated opposed the motion and cross-moved for summary judgment on the grounds that there was no material dispute of fact that Parsons negligently operated the vehicle by allowing Ahlen to exit in a dangerous place and manner.  It asserted that because Ahlen's injury arose out of the use of the shuttle van, the CGL policy excluded coverage.

¶6             While the motions were pending, Ahlen settled her lawsuit against Mills Prescott.  United and Associated agreed to jointly fund the settlement pending the court's coverage determination.

¶7             The superior court granted summary judgment for Associated, ruling that the only basis for liability was Parsons' decision to allow Ahlen to exit the shuttle van in an unsafe location and because that was a decision concerning the use of the vehicle, United's automobile policy provided coverage.

¶8             United opposed Associated's proposed form of judgment on the grounds that it should not include a determination of the insurers' respective duties to defend Mills Prescott in Ahlen's underlying action because United and Associated had not litigated that issue and, in any event, the settlement extinguished any duty to defend.  The court found United's objection was without merit and entered a judgment stating that United had a duty to defend Mills Prescott against Ahlen's claims and to indemnify it for the settlement of the underlying action, and that Associated had no corresponding duty to defend or indemnify.

¶9             United timely appealed.

**ISSUES**

¶10             United argues the superior court erred by denying its motion for summary judgment and granting judgment for Associated, ruling that United had a duty to defend Mills Prescott in the underlying action and indemnify it for the underlying settlement.

**DISCUSSION**

**¶11** The superior court must grant summary judgment when the moving party shows that no material facts are in dispute and the party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). This court reviews a trial court's ruling on cross-motions for summary judgment de novo. *In re Estate of Gardner*, 230 Ariz. 329, 331, ¶ 7 (App. 2012). We view the facts in the light most favorable to the party against whom summary judgment was granted, *id.*, but review de novo whether a genuine issue of material fact exists and whether the superior court erred in its application of the law. *Tobel v. Travelers Ins. Co.*, 195 Ariz. 363, 366, ¶ 13 (App. 1999). "When cross-motions for summary judgment have been filed, this court may evaluate the cross-motions and, if appropriate, remand with instructions that judgment be entered in favor of the appellant[]." *Bentley v. Bldg. Our Future*, 217 Ariz. 265, 270, ¶ 11 (App. 2007) (citation omitted).

**¶12** United argues the superior court erred by granting summary judgment for Associated because the undisputed evidence showed that Ahlen had exited and walked away from the shuttle van before she fell in the snow bank and, therefore, her injury was not causally related to her use of the van.

**¶13** "Arizona courts have broadly construed the concept of 'using' an insured vehicle," and include within the meaning of that term "'any activity involved in the utilization of the covered vehicle in the manner intended or contemplated by the insured.'" *Westfield Ins. Co. v. Aetna Life & Cas. Co.*, 153 Ariz. 564, 568 (App. 1987) (citing with approval 12 Couch, *Cyclopedia of Insurance Law* § 45:325, at 668 (2d Ed. 1981)). Thus, for example, Arizona courts have held that an injury arose out of the "use" of an insured vehicle when:

> (1) another motorist was injured by a driver towing the insured vehicle, *Westfield,* 153 Ariz. at 568;

> (2) a passenger was injured when the driver of the vehicle swerved after a passenger in the insured vehicle made a gesture that suggested he had a gun, *Allstate Ins. Co. v. Johnston*, 194 Ariz. 402, 403, ¶ 8 (1999); and

(3) a passenger was injured by a dog that was not properly
secured in the insured vehicle's cargo area, *Farmers Ins. Co. of
Ariz. v. Till*, 170 Ariz. 429, 431-32 (App. 1991).[3]

**¶14**　　　　However, not all injuries that incidentally involve an insured
vehicle arise out of its "use"; the injury must be causally connected to the
vehicle. *Allstate*, 194 Ariz. at 403, ¶ 8. For example, this court held in *State
Farm Mut. Automobile Ins. Co. v. Loesl*, 194 Ariz. 40, 43, ¶ 16 (App. 1999), that
an insured's "mere transportation of a tortfeasor to a site where he commits
a tort does not establish the requisite causal relationship" necessary to
invoke liability coverage for the "use" of the insured's vehicle. The court
reasoned that the purpose of the insurance agreement was to "pay for the
negligent acts of the insured committed during the operation or use of the
motor vehicle," and, therefore, the injury must be caused by a negligent act
in the use of the insured vehicle, even though the use of the vehicle need
not be the proximate cause of the injury. *Id*. at 42, ¶ 13. *See also Brenner v.
Aetna Ins. Co.*, 8 Ariz. App. 272, 276 (1968) (holding passenger's injury from
a pistol that accidentally discharged while another passenger was "toying"
with it did not arise out of the use of the vehicle; "From the standpoint of
causation, this injury could have occurred in the woods, in a hunting lodge,
or in a house."); *Love v. Farmers Ins. Grp.*, 121 Ariz. 71, 74 (App. 1978)
(holding vehicle owner's assault by criminals who abducted him in the
insured vehicle and beat him to death with candelabrum found in the
vehicle did not arise out of the use of the vehicle; "For purposes of this
essential causal relationship . . . . The attack could have occurred outside
the car as easily as inside the car.").[4]

---

[3]　　　*See also Morari v. Atlantic Mut. Fire Ins. Co.*, 105 Ariz. 537, 538-39
(1970) (relying in part on insurance policy's "loading and unloading
clause," the court held an injury arose out of the use of a vehicle where the
injury was caused by a hunting rifle discharging while the driver was
unloading it from an insured vehicle that was specifically used to transport
hunters and their rifles).

[4]　　　Arizona courts have reached similar results when considering the
applicability of uninsured and underinsured motorist coverage. *See e.g.,
Mazon v. Farmers Ins. Exch.*, 107 Ariz. 601, 603 (1971) (ruling injury to driver
who was struck by a rock thrown from another vehicle did not arise out of
the use of that vehicle); *Ruiz v. Farmers Ins. Co.*, 177 Ariz. 101, 103 (1993)
(holding gunshot injury sustained in a car-to-car shooting did not arise out

¶**15**        The parties have not cited, and we have not found, any Arizona cases addressing whether an injury sustained shortly after a person exits an insured vehicle arose out of the use of the vehicle.[5] However, cases from other jurisdictions that have considered the issue offer some guidance in this matter. *See Westfield*, 153 Ariz. at 568 (noting Arizona follows the majority view that the concept of "using" an insured vehicle should be broadly construed). Generally, an injury involving a pedestrian is not a risk that falls under the definition of "use" of the pedestrian's automobile, even if it occurs in close proximity to the vehicle. *See e.g.*, *Carta v. Providence Washington Indem. Co.*, 122 A.2d 734, 737 (Conn. 1956) (denying coverage to pedestrian injured by the insured vehicle rolling toward her after she exited; "A person is not in the process of alighting if, at the time, he has completed all acts normally performed by the average person in getting out of an automobile under similar conditions and if he has embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car."); *Rosebrooks v. Nat'l Gen. Ins. Co.*, 434 N.E.2d 675, 676 (Mass. App. 1982) (determining a pedestrian who slipped on ice while

of the use of a vehicle because the plaintiff did not show that the other vehicle caused her injury).

[5]        Arizona courts have recognized that an injury to a person outside of a vehicle who is utilizing specialized vehicle equipment might arise out of the "use" of the vehicle for purposes of uninsured and underinsured motorist coverage. *See Tobel*, 195 Ariz. at 370, ¶ 36 (holding employee was entitled to underinsured motorist benefits after he was struck by another vehicle while removing roadway barriers; the court determined the employee's use of the truck was causally related to his injuries because the truck was used to load and unload barriers in the roadway, and the employee was "using" the truck's safety equipment that was designed to protect him during the barrier loading/unloading process at the time of the accident); *see also Chavez v. Ariz. Sch. Risk Retention Trust, Inc.*, 227 Ariz. 327, 329, ¶ 8 (App. 2011) (ruling that for purposes of underinsured motorist coverage, school bus passengers were using the vehicle when struck by a passing automobile while waiting in line to board; the bus driver had deployed the bus's flashing safety lights, which were designed to allow students to safely navigate streets to board and disembark from the bus.) These rulings are inapposite, however, as there is no evidence in this case that Ahlen utilized any specialized features when exiting the shuttle van, or that she was exiting the vehicle at the time of her fall.

holding onto and preparing to enter insured vehicle was not using the vehicle for purposes of insurance coverage); *Cleaver v. Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438, 442 (W. Va. 1998) (stating an injury to passenger riding in a vehicle that struck a pedestrian who was running from his car did not arise out of the use of the pedestrian's car). While courts have recognized an exception when the insured allows a child to exit the vehicle in a dangerous manner, *see e.g., Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 157 Cal. Rptr. 98 (Cal. App. 2 Dist. 1979) (holding injury to child passenger who exited vehicle and ran into the street arose out of the use of the vehicle); *Nationwide Mut. Ins. Co. v. Davis*, 455 S.E.2d 892, 894-95 (N.C. App. 1995) (ruling insured was "using" vehicle when child in her care exited vehicle and was struck by an oncoming truck while crossing the adjacent road), the injury must occur as part of exiting the vehicle.

**¶16** In this case, the evidence showed that Ahlen was an adult who had no difficulty walking independently or negotiating the steps off the shuttle van. Her injury occurred roughly one minute after she exited the van when she was approximately 10 to 12 feet away from the vehicle and walking toward her destination. Under these circumstances, we conclude as a matter of law that (1) Ahlen's injury did not arise out of the "use" of the van as necessary to invoke coverage under United's automobile policy, and (2) was not subject to the automobile "use" exclusion in Associated's CGL policy.[6] *See Johnston*, 194 Ariz. at 403, ¶ 8; *Loesl*, 194 Ariz. at 42, ¶ 13; *Brenner*, 8 Ariz. App. at 276; *Love*, 121 Ariz. at 74.

**¶17** Accordingly, the superior court erred by denying United's motion for summary judgment and granting judgment for Associated. *Bentley*, 217 Ariz. at 270, ¶ 11.[7] Further, in our discretion we deny both parties' requests for attorneys' fees pursuant to A.R.S. § 12-341.01.

---

[6] Based on the parties' joint settlement agreement, we do not reach the issue of whether Ahlen's injuries may otherwise be covered under Associated's CGL policy.

[7] Because we vacate the superior court's judgment, we do not consider United's argument that the judgment improperly included a determination that United had a duty to defend Mills Prescott in the underlying action.

**CONCLUSION**

**¶18**         For the foregoing reasons, we vacate the judgment and direct the superior court on remand to enter judgment for United.  We will award costs to United upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA