184 Ariz. 610 (1995)
911 P.2d 616
Martin BENEVIDES, Florentino Soto, and Eloisa Soto, the parents of the deceased Sabino M. Soto, Plaintiffs Counterdefendants-Appellants,
v.
ARIZONA PROPERTY & CASUALTY INSURANCE GUARANTY FUND, Defendant Counterclaimant-Appellee.
No. 1 CA-CV 94-0248.
Court of Appeals of Arizona, Division 1, Department A.
September 28, 1995.
Review Denied February 21, 1996.[*]
*611 The Ranger Law Firm by Christopher D. Soto, Edward M. Ranger, Myles P. Hassett, Scottsdale, for Plaintiffs Counterdefendants-Appellants.
Surrano & Massey, P.C. by John N. Wilborn, Glenn B. Jenks, Charles J. Surrano, III, Phoenix, for Defendant Counterclaimant-Appellee.
OPINION
GERBER, Judge.
Appellants Martin Benevides (Benevides) and Florentino and Eloisa Soto (the Sotos), as personal representatives of their son Sabino, appeal the trial court's order granting summary judgment in favor of Appellee Arizona Property and Casualty Insurance Guaranty Fund (Fund) and denying the Sotos' motion for a new trial.
FACTS AND PROCEDURAL HISTORY
On November 17, 1988, Benevides and brothers Sabino and Geronimo Soto were in Geronimo's truck listening to the truck stereo. The noise angered Rafael Meraz (Meraz), who requested that they turn the stereo down. When they did not comply, Meraz again complained about the noise. He then pulled a gun and shot all three men, wounding Benevides, who was standing outside the truck, and killing the two Soto brothers who were sitting inside the vehicle. The Sotos demanded that their insurer, Old Hickory, pay the Sotos' policy limits, citing as a reason Geronimo's recklessness and negligence in playing the truck stereo so loudly.
Valley Adjustment Co., agent of Old Hickory, denied the Sotos' claim. The Sotos filed suit in Maricopa County Superior Court against the estate of Geronimo Soto, represented by his widow, Maria del Rosario Soto (Maria). The Sotos again demanded payment of the policy limits. After Old Hickory refused to pay, the Sotos entered into a `Damron' agreement with Maria under which the Sotos would receive a judgment against Geronimo and his estate.[1] The estate assigned to the Sotos all rights against Old Hickory in return for a promise by the Sotos not to enforce their rights against the estate.
The Arizona Department of Insurance suspended Old Hickory's right to transact business and placed the insurance company in receivership. The Fund assumed responsibility to process claims against Old Hickory. The Sotos brought a claim against the Fund under the following provisions of the Old Hickory policy:
We promise to pay damages for bodily injury or property damage for which the law holds you responsible because of a car accident involving a car we insure.
A car accident is an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of a car or other motor vehicle.

(Emphasis added.)
The Sotos filed a complaint against the Fund alleging breach of insurance contract for Old Hickory's denial of their claim. The Fund moved for summary judgment on the basis that the claim was covered neither under Arizona law nor under the policy. The trial court granted summary judgment and approved a formal written judgment in favor of the Fund. Pursuant to Rule 59(a)(8) of the Arizona Rules of Civil Procedure, the Sotos moved for a new trial which the court denied. The Sotos filed a timely appeal from both the judgment and the order denying the *612 new trial. This court has jurisdiction over the Sotos' appeal pursuant to Arizona Revised Statutes Annotated (A.R.S.) sections 12-2101(B) and (F)(1).
ISSUE ON APPEAL
The issue on appeal is whether persons who are shot by someone angered at the noise of a parked vehicle's stereo have a claim under an insurance policy providing for injuries arising from "the ownership, maintenance, or use of a car or other motor vehicle."
DISCUSSION
This court will not disturb a trial court's refusal to grant a new trial unless appellants show that the trial court clearly abused its discretion. See, e.g., Mammo v. State of Arizona, 138 Ariz. 528, 533-34, 675 P.2d 1347, 1352-53 (App. 1983). Summary judgment is appropriate when the evidence presents no genuine issue of material fact. Orme School v. Reeves, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). When considering a trial court's grant of summary judgment, this court views the facts in a light most favorable to the party disfavored under the judgment. Gatecliff v. Great Republic Life Ins. Co., 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991).
The Sotos point to the language in the Old Hickory policy. They argue that the shooting comes under the policy's scope. Arizona law requires a causal link between the vehicle and the injuries, though the car need not be a proximate cause of the injury. Morari v. Atlantic Mut. Fire Ins. Co., 105 Ariz. 537, 538-39, 468 P.2d 564, 565-66 (1970). No causal link exists when the car is merely the situs of the accident. Brenner v. Aetna Ins. Co., 8 Ariz. App. 272, 277, 445 P.2d 474, 479 (1968) (no link between the negligent act of toying with a gun and the use of a motor vehicle); Love v. Farmers Ins. Group, 121 Ariz. 71, 73, 588 P.2d 364, 366 (App. 1978). In Love, the Supreme Court found that the victim's injuries did not arise from the use of the car because the car was merely the situs of the accident, despite the fact that the kidnappers transported the victim to a secluded spot and bludgeoned him to death with a candelabrum found in the car's trunk.
To support their claim, the Sotos rely on two Florida cases. In Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984), the plaintiff was seated in her car when a stranger approached and asked for a ride. When the plaintiff refused, the stranger shot her in the face and took her car. The Florida Supreme Court agreed that "[t]he shooting ... was motivated by and a direct result of the assailant's request to ride in the vehicle and the victim's refusal." Id. at 1117. In Allstate v. Gillespie, 455 So.2d 617 (Fla. Ct.App. 1984), after the insured motorist cut off Gillespie's vehicle in traffic, Gillespie entered the insured's car and assaulted the motorist, who retaliated by shooting Gillespie. The Allstate court found that "Gillespie became enraged because of the manner in which [the insured] drove his car, which precipitated and led to Gillespie's attack on [the insured]." Id. at 620. Thus, as with Novak, the insured's use of the vehicle provided a causal link to the plaintiff's injuries.
The Sotos distinguish their case from another group of Arizona cases where the victim's use of the car did not cause the violence but was a platform of sorts for launching projectiles which caused injuries. Ruiz v. Farmers Ins. Co. of Arizona, 177 Ariz. 101, 865 P.2d 762 (1971) (car used to overtake another motorist for shooting); Mazon v. Farmers Ins. Exchange, 107 Ariz. 601, 491 P.2d 455 (1971) (rocks thrown into insured's car from another car speeding past). The Sotos argue that the "arising out of" language in the policy should receive a liberal construction. They maintain that to interpret this language broadly does not require that the injury be caused by the use of the vehicle "in a strict legal sense."
In their reply brief, the Sotos again urge this Court to interpret their policy liberally. They cite General Accident Ins. Co. v. Olivier, 574 A.2d 1240 (R.I. 1990), where a passing motorist shot the victim as she stood 117 feet away from her car, waiting to give a statement to police about an accident. The court there held that it was unnecessary for the auto to be the instrumentality of the injury since the policy should be interpreted to effect broad coverage. Id. at 1242. See also United Services Auto. Ass'n v. United States Fire Ins. Co., 36 Cal. App.3d 765, 111 Cal. Rptr. 595 (1973).
*613 The Fund argues that Arizona law precludes it from paying claims such as this. It contends that under A.R.S. sections 20-661(3) and 20-664(A)(1), it may pay only those claims covered under an insolvent insurer's policy. The Fund cites Brenner for the proposition that there need be a causal link between the injury and the use of the automobile. 8 Ariz. App. at 277, 445 P.2d at 479. The Fund also relies on Ruiz, where a passenger in one car suffered injuries from a drive-by shooting. There the Supreme Court held that a plaintiff must show that the auto caused the injuries, not merely facilitated them. 177 Ariz. at 102-03, 865 P.2d at 763-64. The Fund argues that if the car in Ruiz was a mobile gun platform, then the truck in this case was merely a "mobile boom box." It argues that the injuries could have happened even if the victims had been playing any stereo not in the truck. According to the Fund, had the three men been using a "boom box" unattached to a vehicle, Meraz could have been just as provoked to shoot them.
RESOLUTION
Interpretation of insurance contracts is a question of law for this court to decide. Thomas v. Liberty Mut. Ins. Co., 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App. 1992). Where no ambiguity exists, this court does not invent ambiguity and resolve it to expand coverage. Id. at 325, 842 P.2d at 1338. A court does not revise a policy to increase risk or extend liability but interprets unambiguous terms according to their ordinary meaning. Id.; see also Brenner, 8 Ariz. App. at 277, 445 P.2d at 479. When determining the scope of coverage of an insurance policy, a court attempts to determine the insurer's intent. Manning v. Summit Home Ins. Co., 128 Ariz. 79, 82, 623 P.2d 1235, 1238 (App. 1980). The court examines what the insured was doing at the time of the accident and the purpose for the activity, as well as whether the insurer intended to provide coverage for certain types of accidents.
In this case, the insurer spells out its intent clearly in its policy. An accident, as the Olivier court observed, is an event which, from the perspective of the victim, is unexpected. 574 A.2d at 1242. The phrase "car accident" connotes that the event involves the car. Further, the "arising out of the use ... of a car" language implies that the death or other injury occurs as a result of the operation of the car. Love, 121 Ariz. at 73-74, 588 P.2d at 366-67. We conclude that, for coverage to exist, an insured must be using the car pursuant to the "inherent nature" of the vehicle. Hawkeye-Security Ins. Co. v. Gilbert, 866 P.2d 976, 979 (Idaho Ct.App. 1994). The "inherent nature of an automobile" is as a means of transport, not as a "mobile boom box."
CONCLUSION
Because the Sotos cannot make a showing that the injuries suffered by the victims arose from the ownership, maintenance, or use of the truck, the trial court did not abuse its discretion by refusing to grant a new trial. Thus, the trial court's order granting summary judgment to the Fund was proper. Accordingly, we affirm.
NOYES, P.J., and CONTRERAS, J., concur.
NOTES
[*] Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.
[1] Damron v. Sledge, 105 Ariz. 151, 460 P.2d 997 (1969).